**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norman Stuckey, | No. CV-18-03213-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Jennifer Leath, Maryam Boroujerdi-Rad, and Meadows & Fries LLP, | |
| Defendants. | |

Pending before the Court is Defendant Meadows & Fries, LLP's ("M&F") Motion to Dismiss (Doc. 11) pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(2) and 12(b)(3). Also pending before the Court is Defendants Jennifer Leath and Maryam Boroujerdi-Rad's (collectively, "Employees;" both M&F and Employees together, "Defendants") Motion to Dismiss (Doc. 13) pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). The Court now rules on the motions.

**I.     BACKGROUND**

On November 19, 2018, M&F filed its Motion to Dismiss (Doc. 11). Plaintiff Norman Stuckey ("Plaintiff") filed a Response (Doc. 15) on December 3, 2018, and M&F filed a Reply (Doc 18) on December 17, 2018. On November 27, 2018, Employees likewise filed their Motion to Dismiss (Doc. 13). Plaintiff filed a Response (Doc. 16) on December 11, 2018, and Employees filed a Reply (Doc. 17) on December 17, 2018.

**A.     Complaint**

Plaintiff brings a direct action against Defendants for their respective actions as

employees of and a professional services firm retained by Stucky Psychological Services, PC ("SPS"). (Doc. 10 ("Compl.") ¶¶ 9–30). The eleven-count Complaint asserts the following causes of action: (i) breach of contract; (ii) conversion; (iii) breach of fiduciary duty; (iv) constructive fraud; (v) common law fraud; (vi) negligent misrepresentation; (vii) tortious interference; (viii) financial elder abuse; (ix) fraudulent transfer; (x) unjust enrichment; and (xi) complete accounting. (*Id.* ¶¶ 31–112). Plaintiff asserts all counts against Employees, and also asserts counts (iii), (iv), (vi), and (xi) against M&F. (*Id.*).

**B. Facts**

The following facts are either undisputed or recounted in the light most favorable to the non-moving party. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Plaintiff, president and CEO of SPS, is a ten-year resident of Sun Lakes, Arizona. (Compl. ¶ 9). Prior to his death, Plaintiff's son, David Stuckey, was the sole owner of SPS, a California corporation with its principal place of business in California. (*Id.* ¶ 20; Doc. 15-1 at 13–16). At all relevant times, SPS employed Leath and Boroujerdi-Rad, both citizens of Orange County, California. (Compl. ¶¶ 12–13). After David Stuckey's death in January 2014, Plaintiff entered into an oral contract with Employees to provide operational loans to SPS. (*Id.* ¶ 22). In return for funding SPS, Plaintiff was to become its owner, president, and CEO, and receive loan repayments and profit disbursement. (*Id.*). Employees were to make periodic financial reports to Plaintiff and "make a good faith offer to buy [SPS] within a reasonable time." (*Id.*).

In early 2014, M&F telephoned Plaintiff in Arizona to offer tax services to SPS. (Doc. 15 at 2). M&F is a limited liability partnership organized in California. (Compl. ¶ 14). M&F's principle place of business is in California, and both of its partners are California citizens. (*Id.*). In October 2014, M&F mailed an engagement letter from California to Plaintiff in Arizona, offering to prepare federal and California state income tax returns for SPS. (Doc. 1-1 at 10–12). Plaintiff agreed to and signed the agreement "as president of [SPS]." (Compl. ¶ 27 n.3).

Plaintiff alleges that Defendant committed the following unlawful acts during 2014–

2018. First, Employees took unauthorized salary advances and improperly booked loan funding. (*Id.* ¶ 2). Second, M&F failed to detect or disclose these unauthorized advances and improper bookings. (*Id.* ¶ 3). Third, M&F provided legal representation to Employees without first obtaining Plaintiff's informed consent. (*Id.* ¶ 8). Fourth, Employees made "bad faith" offers to buy SPS from Plaintiff. (*Id.* ¶ 25). Finally, Employees and M&F failed to report accurate financial information to Plaintiff during this period. (*Id.* ¶¶ 26–27). In response, Plaintiff commenced this action.

## II. LEGAL STANDARD

M&F filed a Motion to Dismiss pursuant to 12(b)(2) and 12(b)(3), and Employees filed a Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). (*See* Doc. 11; Doc. 13). While the Court observes that Defendants make arguments under the banner of standing—which ordinarily presents a "threshold question of justiciability"—those arguments may also be characterized as addressing a "real party in interest" issue. *See In re Swintek*, 906 F.3d 1100, 1102 (9th Cir. 2018). Because the Court finds it dispositive, the Court begins by addressing whether it has personal jurisdiction over Defendants. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) ("[T]here is no unyielding jurisdictional hierarchy. Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry.").

### A. Personal Jurisdiction

Defendants lack sufficient contacts with Arizona to justify the exercise of personal jurisdiction over them. Generally, federal courts have personal jurisdiction over non-resident defendants to the extent allowed by the state in which the courts sit. *See* Fed. R. Civ. P. 4(e), (k); *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Arizona law provides for personal jurisdiction to the extent allowed by the United States Constitution. *See* Ariz. R. Civ. P. 4.2. "The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a [] tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (citation omitted).

Due process requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). This framework gives rise to two forms of personal jurisdiction: "general" and "specific" jurisdiction. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1779–80 (2017). The burden of establishing personal jurisdiction rests on the plaintiff, but if the motion attacking jurisdiction "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). Courts must accept uncontroverted statements in a complaint as true and resolve conflicts of facts contained in affidavits in the plaintiff's favor, but a "plaintiff cannot simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation omitted).

### 1. General Jurisdiction

Under general jurisdiction, a court can hear any claim against a defendant who can be "fairly regarded as at home" in the state. *Goodyear*, 564 U.S. at 919. Generally, an individual is at home where domiciled, and an unincorporated entity—including an LLP— is a citizen of each state in which any member is a citizen. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *see also Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1013, (2016) ("For these unincorporated entities, we too have adhere[d] to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of all [its] members" (alterations in original; internal quotations marks and citation omitted)). Both Employees and M&F, through its partners, are citizens of California. (Compl. ¶¶ 12–14). Accordingly, the Court lacks general jurisdiction over Defendants.

### 2. Specific Jurisdiction

When relying on specific jurisdiction, a plaintiff must establish that jurisdiction is

proper for each claim asserted against a defendant. *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). If personal jurisdiction exists over one claim, the Court "may exercise pendant jurisdiction over any remaining claims that arise out of the same common nucleus of operative facts." *Id.* (internal quotation marks and citation omitted). The specific jurisdiction inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. at 1121 (citation omitted). The Ninth Circuit applies a three-part test to determine whether a defendant is subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211 (citation omitted). The plaintiff must establish the first two factors. *See Schwarzenegger*, 374 F.3d at 802. If the plaintiff does so, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction is not reasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### a. **Purposeful Availment**

A court has specific jurisdiction over claims sounding in contract when a defendant purposely availed himself of the privilege of conducting activities within the forum state, thereby invoking the benefit and protection of its laws. *See Picot*, 780 F.3d at 1212. Purposeful availment requires "affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.* The formation of "a contract alone" with an out-of-state party does not amount to purposeful availment. *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008).

### b. **Purposeful Direction**

For claims sounding in tort, specific jurisdiction is proper when the defendant

purposely directed his actions at the forum state, regardless of where the actions took place. *See Picot*, 780 F.3d at 1212. "Purposeful direction" is satisfied under the "effects" test when the defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1214 (citing *Calder v. Jones*, 465 U.S. 783, 788–89 (1984)). In applying this test, courts must "look[] to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285 (citing *Int'l Shoe*, 326 U.S. at 319). "[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum [s]tate." *Id.* at 290. "[M]ere injury to a forum resident is not a sufficient connection to the forum." *Id.* Rather, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*

## III. ANALYSIS

Although Defendants are similarly-situated in some respects, the Court will address whether it has personal jurisdiction over M&F and Employees separately.

### A. M&F

Because Plaintiff's claims against M&F depend on the existence of the October 2014 fee agreement, the purposeful availment test applies for the first prong of the analysis. *See Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 625 (9th Cir. 1996) (noting that claims "dependent upon the existence of an underlying contract" sound in contract). In early 2014, M&F telephoned Plaintiff to offer tax services to SPS. (Doc. 15 at 4). On October 2, 2014, M&F mailed an engagement letter from California to Plaintiff in Arizona. (Doc. 15-1 at 21; *see also* Doc. 1-1 at 10–12). The letter provided that M&F would: (1) prepare SPS's 2014 federal and California income tax returns, (2) work with SPS's representatives in California, and (3) send draft and final versions of returns to Plaintiff, as president of SPS, in Arizona. (Doc. 1-1 at 10–12). During 2015–2017, M&F "reviewed

and ratified mailings, tax returns, and loan repayments," and "periodically reported [SPS] activity to [Plaintiff] in Arizona." (Doc. 15 at 3).

Courts recognize that a contract can serve as a jurisdictional hook when it involves a forum selection clause or work for a client in the forum state. *See Burger King*, 471 U.S. at 479–480 (finding that a Florida forum selection clause weighed in favor of finding that a Michigan defendant purposefully availed himself of Florida's laws); *T.M. Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310, 314 (9th Cir. 1987) (reasoning that continuing to work for a California client weighed in favor of finding that a Kansas defendant purposefully availed himself of California law). Neither of these elements are present here. The engagement letter does not mention—and neither does Plaintiff assert—a forum selection clause for Arizona. (*See generally* Doc. 1-1 at 10–12). Neither does M&F perform work for an Arizona client—SPS is incorporated and maintains its principal place of business in California. To be sure, it is undisputed that M&F performed work solely in California. (*See* Doc 15 at 1). Consequently, M&F's initial contact with Plaintiff in Arizona alone is insufficient to constitute purposeful availment, thus failing the first prong of the Ninth Circuit test.

Under the second prong of the Ninth Circuit test, the claims must arise or result from a defendant's forum-related activities. *See Picot*, 780 F.3d at 1211. The Ninth Circuit applies a "but for" test when examining this second prong. *Grey & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761 (9th Cir. 1990). Plaintiff's claims arise out of M&F's tax services in California, provided to a California entity, whose principal place of business is in California. (*See* Doc. 15 at 2–5). M&F did not visit Arizona or provide accounting services under Arizona tax law. (*See generally id.*). Because Plaintiff's contract claims arise out of M&F's California-related activities, not Arizona-related activities, the claims fail the second prong of the Ninth Circuit test. Accordingly, M&F lacks sufficient minimum contacts with Arizona for this Court to exercise personal jurisdiction over it.[1]

---

[1] Because Plaintiff failed to establish the first two prongs of the Ninth Circuit test, the Court need not address the third prong regarding whether the exercise of jurisdiction

**B.     Employees**

Plaintiff brings claims against Employees that sound in tort and in contract; therefore, both the purposeful availment and the purposeful direction tests apply. *See Picot*, 780 F.3d at 1212. Under either test, the exercise of personal jurisdiction is improper.

**1.     Purposeful Availment**

Under the first prong of the Ninth Circuit test for claims sounding in contract, Plaintiff must establish that the non-resident Employees purposefully availed themselves of the privilege of conducting activities in Arizona. *See Picot*, 780 F.3d at 1212. Plaintiff does not contest that Employees "haven't physically been to Arizona," but argues that Employees established sufficient contacts with the forum through their dealings with Plaintiff, a known Arizona resident. (Doc. 16 at 2–3). Specifically, Plaintiff asserts that Employees acted in concert with M&F to solicit Plaintiff in Arizona and that Employees entered into an oral contract with Plaintiff while Plaintiff was in Arizona. (*See id.*). As reasoned above, M&F's interactions with Plaintiff in Arizona are insufficient to demonstrate purposeful availment because M&F sought only to perform accounting services for a California entity in California. (*See supra* Part III(A)).

Likewise, the fact that Employees entered into an oral contract with Plaintiff while Plaintiff resided in Arizona fails to demonstrate purposeful availment. *See Boschetto*, 539 F.3d at 1017 (formation of "a contract alone" with an out-of-state plaintiff does not amount to purposeful availment of the plaintiff's home forum). Assuming the truth of Plaintiff's allegations—at all relevant times during negotiation and non-performance of the contract—Employees worked for SPS in California, mismanaged funds of the California entity from revenue generated in California, made an unauthorized filing with the California Secretary of State, and did so with the aid of SPS's California-based accounting firm. (*See* Compl. ¶¶ 22–23; *see also* Doc. 12 at 9). The fact that Plaintiff resided in Arizona and received reports of Employees' California-related activities in Arizona is merely incidental to Employees' alleged misconduct in California; thus, the Court finds that

---

would be reasonable. *See Schwarzenegger*, 374 F.3d at 807 n.1.

Plaintiff cannot satisfy the first prong of the Ninth Circuit test with respect to Plaintiff's claims sounding in contract under the purposeful availment test.

### 2. Purposeful Direction

Under the first prong of the Ninth Circuit test for claims sounding in tort, Plaintiff must establish that the non-resident Employees purposely directed their actions at Arizona, even if the actions took place elsewhere. *See Picot*, 780 F.3d at 1212. In this case, Plaintiff clearly establishes a prima facie case that Employees "committed an intentional act"—or several acts by way of their alleged mismanagement of SPS funds—causing harm that Defendants "know is likely to be suffered in the forum state." *See id.* at 1214. Accordingly, the Court will focus its purposeful direction inquiry on whether Employees' alleged acts were "expressly aimed at the forum state." *See id.* [2]

Based on the following, the Court finds that the case before it has much more in common with *Walden* and *Morrill*—where courts found that there was no personal jurisdiction over defendants—than *Calder*. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144–45 (9th Cir. 2017) (distinguishing *Calder* on the grounds that the connection with the forum in *Calder* "was largely a function of the nature of the libel tort," which was not present there, nor here). Here, Plaintiff does not allege that Employees intentionally or purposefully sought to conduct business in Arizona—as opposed to with Plaintiff generally—in a meaningful way. (*See generally* Compl.); *see also Walden*, 571 U.S. at 290

---

[2] At oral argument, Plaintiff argued for the first time that the *Calder* "effects" test gives the Court personal jurisdiction over Employees. In rebuttal, Counsel for Employees argued that Plaintiff did not raise that argument in his moving papers, and initially requested supplemental briefing on the issue before noting that he did not believe supplement briefing was necessary.

Although the Court observes that Plaintiff does not cite *Calder* or the "effects" test in his responsive filing to either pending motion, the Court acknowledges that both parties briefed the issue of personal jurisdiction extensively, so it will fully address Plaintiff's "effects" arguments herein. (*See generally* Doc. 15; Doc. 16); *but see United States v. Halling*, 232 Fed. Appx. 692, 693 (9th Cir. 2007) (unpublished) ("We do not consider the additional arguments raised for the first time at oral argument" (citing *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992)). Moreover, the Court agrees with Counsel for Employees that supplemental briefing is not necessary to resolve this matter.

(finding that a defendant does not purposefully direct conduct at the forum state when the plaintiff was "the only link between defendant and the forum"); *Picot*, 780 F3d at 1215 (finding that when a Plaintiff's injury travels with him outside the forum state, the defendant's alleged action was not purposefully directed at the forum state). Rather, "[t]he allegedly tortious conduct here involved very limited communications and proceedings in Arizona, all of which arose out of and were component parts" of Employees' allegedly improper business activities and financial mismanagement in California. *See Morrill*, 873 F.3d at 1144–45 (reasoning that a defendant's appearance in an Arizona court was "solely a by-product of Plaintiffs' residence;" accordingly, there was no personal jurisdiction over defendants when an Arizona-based attorney brought tort claims in the District of Arizona for abuse of process and wrongful institution of civil proceedings against out-of-state defendants, even though the defendants travelled to and appeared in Arizona Superior Court as part of the underlying action that gave rise to the dispute).

Specifically, Plaintiff argues that Employees purposefully directed their actions at Arizona because: "(a) [Defendants] all knew they were dealing with an Arizona funder of the business over an extended period; (b) they sent money to Arizona for years to repay [Plaintiff's] personal loans to [SPS]; and (c) [Employees] routinely reported the company's financial data to the Arizona citizen-owner[.]" (Doc. 16 at 3). Stated another way, Plaintiff contends that "[b]ecause Defendants knew that Plaintiff[] [was] from Arizona, it was foreseeable that some injury to [him] could have been experienced there based on the actions taken by Defendants in connection with [SPS]." *Morrill*, 873 F.3d at 1144 (rejecting the argument as an insufficient basis to establish purposeful direction). Although "[h]arm suffered in the forum state is a necessary element in establishing purposeful direction," it is not alone sufficient. *Id.*

Additionally, "the potential foreseeability of some incidental harm to Plaintiff[] in Arizona," due to substantial activities hindering the California entity owned by Plaintiff, "without more, does not show that Defendants expressly targeted the forum state." *Id.* at 1145. "Such reasoning improperly attributes a plaintiff's forum connections to the

defendant and makes those connections decisive in the jurisdictional analysis." *Id.* (internal quotation marks and citation omitted). The fact that Defendants knew the owner and funder of SPS was in Arizona, and sent money and information to Plaintiff in Arizona "obscures the reality that none of [the] challenged conduct had anything to do with [the forum state] itself." *Id.* (quoting *Walden*, 571 U.S. at 289) (alterations in original). Rather, Employees' relevant alleged actions—taking unauthorized salary advances, improperly booking loan funding, making an unauthorized filing with the California Secretary of State, making bad faith offers to buy SPS, and preparing inaccurate financial reports—all occurred in California, and were related to Plaintiff's involvement with a California entity. (*See* Compl. ¶¶ 2, 3, 8, 23–27). "Therefore, as in *Walden*, the forum state was only implicated by the happenstance of Plaintiff['s] residence." *Morrill*, 873 F.3d at 1146. Even if Employees deprived Plaintiff of funds historically sent to him in Arizona, Plaintiff "would have experienced this same lack of access [to the allegedly mismanaged funds] in [Arizona], Mississippi, or wherever else" he might have resided and "found [himself] wanting more money than [he] had." *Id.* at 1143–44 (citing *Walden*, 571 U.S. at 290).

Accordingly, the Court finds that Plaintiff fails to establish that Employees committed any act "expressly aimed at the forum state." *See Picot*, 780 F.3d at 1214; *see also Morrill*, 873 F.3d at 1148–49 ("Plaintiff[] [is] required to make a prima facie showing that [Employees'] alleged actions were directed at Arizona, not just at individuals who resided there. . . . Plaintiff[] failed to do so."). Plaintiff thus fails to establish purposeful direction and likewise fails the first prong of the Ninth Circuit Test.

### 3. Forum-Related Activities

Addressing the second prong of the Ninth Circuit test, the Court finds that none of Plaintiff's claims arise out of or relate to Employees' limited Arizona-related activities. *See Picot*, 780 F.3d at 1211. Again, Plaintiff alleges that employees mishandled SPS funds in California and interfered with a contract for work in California, causing injury to Plaintiff through the economic losses of the California entity owned by Plaintiff. *See supra* Part III(B)(1)–(2). All of these alleged activities underscore Employees' connection to

California, without any activities connected to Arizona. (*Id.*). Consequently, Plaintiff fails to establish the second prong of the Ninth Circuit test because Plaintiff's claims do not arise out of Employees' Arizona-related activities.

Accordingly, Plaintiff fails to establish the first two prongs of the Ninth Circuit test regarding his claims against Employees, regardless of whether the claims sound in tort or contract. Thus, Employees lack sufficient minimum contacts with Arizona for this Court to exercise personal jurisdiction over Employees.[3]

### IV. Miscellaneous Arguments

Because the Court concludes that it lacks personal jurisdiction over Defendants, it need not address Defendants' other arguments.[4]

### A. Amendment

Plaintiff requests leave to amend if the Court grants either of Defendants' respective motions to dismiss. (*See* Docs. 15 at 6; Doc. 16 at 8). A plaintiff may, under certain circumstances, be entitled to leave to amend to attempt to cure defects in a complaint through allegation of other facts if the complaint is dismissed under Rule 12(b)(6). *See, e.g.*, *Schreiber Distributing Co. v. ServWell Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, lack of personal jurisdiction, pursuant to Rule 12(b)(2), "is not curable by amendment." *Wild W. Guns, LLC v. Superior Ammunition, Inc.*, No. 3:18-CV-00043 JWS, 2019 WL 885915, at *1 (D. Alaska Feb. 23, 2019). Nonetheless, the Court

---

[3] Again, the Court need not address the third prong. *See supra* note 1.

[4] Defendants raised additional arguments regarding standing, statutes of limitation, venue, and forum non conveniens. (*See* Doc. 11; Doc. 13). While Defendants could potentially prevail on several grounds, the issue of personal jurisdiction is dispositive, so the Court limits its analysis accordingly.

For instance, in addition to Plaintiff's contract-related claims, Plaintiff alleges financial elder abuse of a vulnerable adult (count viii) against Employees. (Compl. ¶¶ 76–85). In Arizona, a "vulnerable adult" is "an individual who is eighteen years of age or older and who is unable to protect himself from abuse, neglect or exploitation by others *because of a physical or mental impairment*." A.R.S. § 46-451 (emphasis added). Here, as an alternative basis to dismiss the claim, Plaintiff does not plead any "physical or mental impairment" that could qualify him as a vulnerable adult. (*See* Compl. ¶¶ 76–85).

dismisses the action without prejudice.

## V. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Defendant Meadow & Fries, LLP's Motion to Dismiss (Doc. 11) is **GRANTED** pursuant to Rule 12(b)(2).

**IT IS FURTHER ORDERED** that Defendants Jennifer Leath and Maryam Boroujerdi-Rad's Motion to Dismiss (Doc. 13) is **GRANTED** pursuant to Rule 12(b)(2).

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are dismissed without prejudice (all other relief requested in the motions is denied as moot). The Clerk of Court shall enter judgment accordingly and close this case.

Dated this 9th day of April, 2019.

James A. Teilborg
Senior United States District Judge